Mr. Harvey is here for Sullivan. Sanders for the government. Mr. Harvey, you may begin. Thank you. Good morning, Council. We are here to contest what I believe to be the most gargantuan search warrant that I know you've ever seen. I can't think of a bigger one. We have the one of the largest buildings in DeKalb County, Georgia. It contains laboratories. It contains private offices. It contains hundreds of unique and private spaces. And a Superior Court judge in DeKalb County issued a warrant to search the entire building. So are you sort of proceeding, I guess, to the second of your arguments? We're sort of bypassing the stuff about the the sniffer? The sniffer. Well, you know, good question. I'm going to segue back into that because I think that the sniffer is a search in itself. And that's what we argued in our first component of the brief to this court. So I do think that getting the MAC addresses is an invasion of privacy and is a search and was not, by the way, was not contained in the warrant in this case. But we've said, right, I mean, we've said plenty of times that if it's in the affidavit, good enough. I mean, the very first word of the warrant, as I read it, is affidavit. Affidavit having been duly sworn, whatever, you look at page two, it says, you know, sort of based upon the affidavit. You look at the affidavit, pretty clearly describes what the sniffer is going to do. I mean, isn't that sort of good enough under our case law? No. Why is that? Because Groh versus Ramirez, the United States Supreme Court says it has to be incorporated with words of incorporation. You don't think based upon the affidavit, good enough? No. And why is that? Because that's just a review. That's just generic language that says I've reviewed the affidavit. I don't incorporate it in here. But I've reviewed it and I think there's probable cause. That's all that says. It does not have any words of incorporation. What do words of incorporation accomplish if not I've reviewed the affidavit and based upon the affidavit, I conclude there's probable cause? I don't really, I mean, this is just sort of form over substance, right? You know, I disagree with you because I think the United States Supreme Court in Groh versus Ramirez, in Justice Scalia's therein, I think specifically says that it is the warrant that is of constitutional import. And that warrant has to have words of incorporation if you want to have the contents of that affidavit brought into the warrant, but it is the warrant itself that is of constitutional import. Well, the warrant specifically said, though, that it was based on the attached affidavit. Well, it said I've reviewed the attached affidavit, but it didn't incorporate it. Now, you know... It said, quote, based on the affidavit. Yes, sure, but not incorporated herein. Has any court ever said that in order to effectuate a search warrant and you're going to use a drug sniffing dog you got to put that in the warrant, that you're going to use a drug sniffing dog? Well, no, you don't have to put it in the warrant. So what's the difference? What's the difference between a drug sniffing dog and a sniffer? Well, I think you've skipped over the first part. The first part is if you incorporate the warrant and the warrant says we're going to use a dog, then you can use a dog. If... But I guess my question is the warrant doesn't necessarily have to say that you're going to use a drug sniffing dog if you're going to use a drug sniffing dog. It does if the drug sniffing dog is sniffing some place that is constitutionally protected and that one has a reasonable expectation of privacy. You know, we're wordsmiths. We're supposed to be. I assume we're wordsmiths. Is the laptop in this case... Yes. ...had the child pornography? Was it an Emory University laptop or did it belong to Mr. Sullivan? I believe it was an Emory University laptop. How does Mr. Sullivan have a reasonable expectation of privacy in a laptop that belongs to Emory University? Because the courts have said many times that just because you're an employee does not mean that you don't have a reasonable expectation of privacy in your space, for example. He's an employee of Emory. Courts have said many times that if you have a reasonable expectation of privacy in a laptop that you don't own? Yes.  I will be glad to give you a supplemental brief, but I think... Well, let me ask you this now. I thought that... Did you represent Mr. Sullivan in the district court? Only for sentencing. I thought he conceded in his motion to suppress that the warrant authorized the use of a sniffer. No, he actually didn't. He said the warrant affidavit mentions the sniffer and that the sniffer was, in fact, mentioned. That's on page, I believe, nine of the affidavit. The warrant itself does not mention the use of a sniffer. And it's our contention that the warrant wasn't incorporated. As I'm looking at the transcript of the hearing, he said, the lawyer said, this is the motion to suppress hearing. Judge asks, are you contending about the sniffer? He says, well, I was until I figured out what was really going on here. I think the search warrant allowed him to use the sniffer. Okay, and I think... That's invited error. Well, no. I believe that language is important. And I hope that we all believe that language is important. I think is not a concession, nor is, based on this affidavit, I find probable cause. That's not incorporation, and I think is not a concession. But let's assume that it is. Let's assume, let's take the next step. Let's assume that a sniffer is not a Fourth Amendment event and that the warrant authorized a sniffer. It's still backwards. Let's take the whole building. You're authorized to search everything and anything in that building. Well, if you look at what the warrant sets out, it sets out 13 things authorized to search for. And they're all connected to this particular device, having a media access control address, and it has it all specified and all the things associated with that. It doesn't authorize any blanket search of the whole building at all. Well, I think I disagree with you. Number one in the warrant is that particular wireless device. Number two is electronic data processing and storage devices. There's nothing that says that those devices or any of the other devices are connected with that particular MAC address or that particular device. Well, I think that's understood the way it's outlined and listed. I understand what you're saying, but it's understood. I understand that the Fourth Amendment is kind of like the one Fourth Amendment at this particular point, but I still think there's some validity to it. And that if there is no controlling language, you know, you can't take it. Even if you're right, how do you get around the good faith exception? Because I think that the warrant is so broad on its face that no one, no buddy, no competent agent can say, yes, and the agents did say, I'm authorized to search anything in this building. Well, the agents consulted with General Counsel for Emory and with General Counsel for the Department of Homeland Security and acted upon the advice that was given to them. So how do you get around good faith exception when you take that factor into consideration? Well, once again, I think that's outside the four corners of the warrant. And if you are determining the validity of the warrant, then that wasn't imparted to the issuing judge. And it's outside the four corners of the warrant. We've got a warrant. We've got four corners of the warrant. And we've got three different times that the officers went to law enforcement agency, agents went to this building. June 5th, June 10th, I think, and then finally execution on June 15th. I'm out of my first 10 minutes, so. Well, you've reserved some time for rebuttal. I did. I'll get to talk to you again. Ms. Sanders. Good morning, and may it please the court. Erin Sanders on behalf of the United States. Your honors, this search was never going to be a search of one of the largest buildings in DeKalb County. This was a targeted search, as made clear in the affidavit, that a sniffer device was going to be used. Agents all along intended to use that device to narrow their search. As the court has noted already, there are two places in the actual two-page search warrant that incorporate by reference the affidavit, which specifically details the sniffer device that was going to be used. The sniffer is a localization device, right? It's not intended to go out and find something as you drive down the road. It's to localize something once you have gotten a general area pinned down, right? That's exactly right, your honor. That's exactly right, your honor. And even more narrow than, say, a cell site simulator, which a sniffer is nothing like, but it's an even more narrow focused area than that because it's centralized to Wi-Fi. The Wi-Fi router and the access points and here within the Rollins building, it was a very localized area. But tell me about it. It doesn't have a direction finding needle that points to something, does it? It doesn't. It just shows the amplitude as you move closer to and further away from whatever your target might be? Yes, your honor. It sort of works like a hot or cold. So there was testimony at our hearing that when one agent went to the second and the fourth floor simultaneously, the sniffer registered no readings there, meaning it didn't alert to anything at all. But then once they got to the third floor and specifically close to Dr. Sullivan's office door, it alerted. I think it both beeped and... Shows you a strength of signal. Correct, your honor. The closer it got to zero was the strongest, a strong signal. Yes. It's almost like a metal detector. Exactly. The thing that the sicko used in No Country for Old Men. If you've seen that movie, right? I haven't. Yeah, well, good for you. It's pretty disturbing. But yeah, so it's sort of like a metal detector. Like a metal detector or like Judge Wilson has already pointed out, like a drug sniffing dog. It simply is programmed like a drug sniffing dog is trained to detect contraband. It simply alerts when the user of the device is close by to the MAC address that it is looking for. So let me ask you this about the breadth of the search, the size of the building. This is a little different, I guess, as I read it. I don't know, you might have a better case, but the case that seems most closely on point here with respect to the needing a second warrant for the search of the office within this building is our case in Bradley. But Bradley is a little bit different, right? I mean, it's not a 19,000 square foot building. It was a building with four units and not lots of labs and all that stuff. So is Bradley the best case or is there something better, do you think? I do still think that Bradley is the best case, your honor, because, I recognize the differences that your honors pointed out, but what was key to the court's analysis in Bradley was that the warrant permitted a search of the entire building so long as the agents reasonably believed that they were going to find the items to be seized in that location. And that's exactly what we have here. Once that sniffer device alerted outside of Dr. Sullivan's office, the officers, the agents, absolutely reasonably believed that they were going to find the MAC address device in there and then execute the search warrant in accordance with its terms from there. Again, looking for all of the items delineated in the search warrant, all connected with the underpinning requirement that they be capable of containing child pornography. And Judge Wilson, you asked Mr. Harvey, what's the difference between a drug sniffing dog and a sniffer? And I would submit there is none. The case law from the Supreme Court and this court on drug sniffing dogs is precisely on point. And finally, to your honor, Judge Wilson's question about good faith exception, that can't be gotten around here. I mean, I think the warrant obviously was particularized in the place to be searched for the reasons we've discussed. And it was also, they didn't need a second search warrant once that sniffer device alerted outside Dr. Sullivan's office. But at the end of the day, good faith cannot be gotten around. And Mr. Harvey mentioned that the evidence about Agent Thomas consulting with outside counsel for Emory and Homeland Security was outside the four corners of the warrant. And I would just note that in United States versus Martin, this court specifically found that in analyzing an argument about good faith exception, it's absolutely appropriate to look outside the four corners. So I think the testimony about Agent Thomas consulting with counsel is absolutely on point. And it shows that these agents were executing this warrant in accordance with its terms and its understanding. Everybody understood the sniffer was going to be used. They executed it to a T. And at the end of the day, the good faith exception. Well, what about waiver in this appeal? I mean, we've got some issues that have been raised for the first time here, it looks like. What's your position here? We absolutely do, Your Honor. And on that, it was conceded below. Not only from the portion of the evidentiary hearing transcript that was noted for Mr. Harvey or to Mr. Harvey, but as detailed on page 11 of our brief, there was that statement made at the evidentiary hearing. And then before that, we have a particularized motion to suppress. And then after the hearing, we also have a post-hearing brief in which counsel for Dr. Sullivan states in both of those filings, in this case, the agents did, in theory, get a warrant to use their sniffing device to determine the location of a computer. And then they filed a post-hearing reply brief also stating, having gained access to the building and received permission to use a device that could locate in which room the contraband was located. We have this position all along that agents were authorized to use the sniffer. And then the R&R comes out and Judge Salinas notes in there, as part of her finding that the warrant was not overbroad, that the language in the affidavit cured any concern, any argument that the defendant was raising about the possibility of a general exploratory search. And then we have the R&R objections. And that's the first time we see from the defendant any argument about, quote, the warrant did not authorize the search through a sniffer device. And even within those R&R objections and underneath those headings, the defendant made no argument, as he does in his brief, about third-party doctrine, GPS, all of the things outlined in our brief. There was no argument presented there in those R&R objections under that heading. It's not until we have the appellant's initial brief in this case that, again, under the section of the brief entitled, the warrant did not authorize the search of the sniffer, that we have these new arguments. So it's our position that all of those new arguments are waived. And even if they're not waived or invited error and we're under a plain error review, fatal to all of these arguments is that the defendant can cite no case standing for the proposition that he argues in the initial brief about what a sniffer is and what it does. If there are no further questions, let me ask you, let me, let me ask you about whether a second warrant might have been necessary. What if, what if the, what if the computer had been locked? What if the computer had been locked? Yes, if the laptop had actually been locked and couldn't be opened, would it require a second warrant? Oh, physically opened? Yes. No, Your Honor. No, Your Honor. Because then, Your Honor is getting to the point. I mean, that's hypothetical because it wasn't. But what if it had been? Sure. But I think, and you're getting to the point that when the agents, because Dr. Sullivan did shut the laptop. And at that point, the sniffer reading on the outside of the door. Stopped. Stopped. Yes, sir. So then once they got inside and they were able to physically open it, the sniffer started giving off readings again, telling them that that's their device. But I think they had that even on the outside of the door, that the device they were looking at. And they also knew the device. Well, if it had been locked, so let's just say it, let's say if it was locked, would it have required a second warrant then? No, Your Honor. Because they wouldn't have been able to open it up and reactivate the signal. That's true. But I think the warrant still gave, they still had a reasonable belief that that was their device. Or they could have just stopped and seized all of the electronic items under the terms of the warrant. I'm not sure if the record's clear. Was it the only device in the office? No, Your Honor. It was not the only electronic device in the office, nor it was the only device seized. That laptop was seized. The desktop computer was seized. There was an external hard drive connected to the laptop with the suspect device. It had an external hard drive connected to it. And that's what agents were able to do a preview. And they immediately saw child pornography on that external hard drive. There were also some thumb drives that were seized, and I believe a cell phone or two. Okay. Did I answer Your Honor's question? I think so. And if there are no further questions, I will rest on the brief and ask this Court to affirm. Thank you, counsel. We will hear again from Mr. Harvey. Thank you. Let me start by saying, what then prohibits just a blank warrant? Hey, here's a blank warrant. But us agents, we're going to execute this in good faith. Trust us. We'll do the right thing. But that's not even, I mean, be fair. That's not remotely this case. As Judge Vinson said, you've got a warrant here that has this bullet list of the things they're going to look for. And then, I mean, don't we want to encourage officers, if they have any qualms about the scope of the warrant at all, to go consult with some experts? These guys did. I don't know why that would be outside the realm of a good faith inquiry. And don't we want our agents to get an investigation in which they narrow it down first, and then go get a warrant to invade a presumptively protective space? We have, Dr. Sullivan has always argued that this investigation was done backwards. We got a search warrant for an entire building. Then we went into the building and used a device to try to narrow it down. And then we did not go back and get a second warrant to go into a protective space. Just the opposite of what an ordinary investigation would be. And by the way, I don't think, I do not think that Bradley is the closest analogous case in this instance. Bradley was an all records search under the pervasive fraud theory. So I don't think it has general application to this particular situation. So what's the better case for your side? If not Bradley, what's your case? They say Bradley, you say? Well, I say cases like we cited that say any time you're in a multiple dwelling building that you have to have probable cause for each particular portion of the dwelling. And just remind me in the 11th Circuit, what case would sort of counterman Bradley with respect to the principle that you're talking about?  Not necessarily 11th Circuit cases. There's a case out of the 6th Circuit, case out of the 4th Circuit, case out of the 2nd Circuit. But I think it's a general principle that in multi-dwelling buildings, you've got to have probable cause if you know it's multiple dwellings. I think all those cases that you cite though were no warrant cases. We have a warrant here. That's, I mean, that's a big distinction. No, no, no. I don't think so, Judge. And I disagree with you that some of those cases had warrants and they specifically said that... Well, tell me one. That, I'll be glad to. Let me look. I'm looking in my appendix. Well, I don't want you to use all your time. I don't know. Go ahead and make your argument. But we'll find it if there is one. Can I, well, I'm sure there is. Can I submit a supplemental letter? That won't be necessary. We can find it. Yeah, if they're already in your brief, we trust you. We'll find it. All right. I'm glad you do. Thank you. So I disagree that Bradley controls for one thing. And as I said, Dr. Sullivan has always said that the investigation went from the large without probable cause to determining... You might have a better... Your argument might be persuasive if law enforcement did not specifically have... They had an IP address that was assigned to a device with a MAC address. They had the specific MAC address that the device was named KEB-HP. They knew that device was in there, in that building. No, they knew that the device had connected to the internet through a general open network in that building. They specifically said in the motion to suppress that they didn't know who that computer was associated with. They knew that computers can be sold. They didn't know whether it was in a backpack. They didn't know whether it was transient. They didn't necessarily know that it was in the building. What they knew was that... They knew it was in the building, somewhere in the building. No. They knew it was in there. At some point, it had been in that building and that building has an open network. So, somebody can come through with a backpack. Somebody can come through with a purchased computer and have used the open network. They did not know that it was in that building. They knew that it had connected through the open network in that building. So, I disagree with that interpretation of the facts as well. All right. I think we have your argument, Mr. Harvey. Yes, sir. Thank you. Thank you.